UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

KEITH DREW,

                Plaintiff,

-v-                                                   No. 18-CV-10719-LTS-RWL

CITY OF NEW YORK et al.,

                Defendants.

-------------------------------------------------------x

MEMORANDUM ORDER

Keith Drew ("Plaintiff") brings this pro se action against the City of New York, former Department of Correction Commissioner Joseph Ponte, former Commissioner Cynthia Brann, former Warden Maxsolaine Mingo, Warden Kisa Smalls, Captain Doe, Correction Officer ("C.O.") Unisha Flood, C.O. Cynthea Cowan, C.O. Joel Andrews, C.O. Edward Jeffries, Doctor Marie-Ange Dorval and New York City Board of Correction employee Tonya Glover (together, "Defendants") alleging that Defendants violated his federal constitutional rights while he was detained at the George R. Vierno Center and the Anna M. Kross Center on Rikers Island. (See docket entry no. 22 ("Am. Compl.").)

Defendants[1] move for dismissal of Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket entry no. 30.) Defendants have also moved for partial summary judgment in this action. (Docket entry no. 37.) Plaintiff has not responded to either motion. The Court has jurisdiction of this action pursuant to 28 U.S.C. section 1331. The Court has reviewed the parties' submissions thoroughly and, for the following reasons,

---

[1]        Corporation counsel of the City of New York moved for the relief described herein. Corporation counsel noted that it does not currently represent Defendant C.O. Cowan and Captain Doe but "respectfully requests that any relief granted to Defendants be extended to these individuals." (Docket entry no. 31, at 1 n.1.)

Defendants' motion for partial summary judgment is granted in entirety, and Defendants' motion to dismiss is granted as to the remaining claims.

BACKGROUND

Plaintiff alleges[2] that, while he was a pretrial detainee at Rikers Island, see Am. Compl. ¶¶ 21-22, 28, 43, he experienced four lockdowns that were "void of legitimate penological justification" and "served to punish" him in violation of his Constitutional rights. (Id. ¶ 37.) Plaintiff alleges that he suffered a five-day lockdown in December 2015, id. ¶ 11; a 72-hour lockdown from February 29, 2016, through March 2, 2016, id. ¶ 2; an approximately 18-hour lockdown from March 10, 2016, through March 11, 2016, id. ¶ 3; and a 12-hour lockdown from September 13, 2018, through September 14, 2018. (Id. ¶ 43.) Plaintiff attaches a letter from the Legal Aid Society's Prisoner Rights Project ("Legal Aid") relating to a report of the December 2015 lockdown that Legal Aid received from Mr. Drew, noting that Mr. Drew says he was "denied" "all mandated services, including medical clinic access / sick call" during that time. (Am. Compl., Exhibit 1 ("Legal Aid Letter").) During the lockdown that occurred from March 10, 2016, through March 11, 2016, Plaintiff alleges that he "received scalding, hot water burns from a gang-af[f]iliated inmate" and "suffered the pain of this burn injury for a full six (6) hours before finally being released" and "escorted to the clinic for medical attention." (Id. ¶¶ 4-5.) Plaintiff alleges that the "seriousness of the burn injury" was minimized and "not adequately document[ed][,]" id. ¶ 6, nor "properly treated" until "another Injury Report, [was] submitted on March 23, 2016[.]" (Id. ¶ 13.) Plaintiff also attaches a copy of the inmate grievance and request program statement form he filed in relation to the March 2016 lockdown,

---

[2] The allegations summarized here are taken from the Amended Complaint and are presumed true for the purposes of this motion practice.

writing that, as he "tried to slip out of [his] cell," the "tour officer slammed [his] hand in the cell door to prevent [him] from getting out."  (Am. Compl., Exhibit 1 ("March 2016 Grievance Form"); see also Am. Compl. ¶ 25.)

Plaintiff claims that he suffered the lockdowns at issue because he was wrongly classified and placed in the incorrect housing unit.  (Id. ¶ 35.)  Specifically, he alleges that he was misclassified based on the inclusion of two "High Charges"—"Assault on Staff" and "Fighting"—which were "inaccurate" and resulted in his placement in "call-status housing" where he was subject to "arbitrary lock-down[] in contrast to detainees in dorm-status who are not subject to the same level of restriction" and that these lock-downs were done "without legitimate purpose."  (Id. ¶¶ 31, 34, 36.)  Plaintiff alleges that the classification policy "lacks procedures for challenges or clarification, and caused Plaintiff undue burden, and punishment through First Amendment, Freedom of Association, violations; not [a]ffecting those detainees in dorm-status housing."  (Id. ¶ 33.)  Plaintiff alleges that the "liberty interest[s] of pretrial detainees" in his housing unit were infringed through their placement in "lock-down status continuously."  (Am. Compl., Exhibit 1, Victim Declaration.)  He seeks injunctive and declaratory relief and "compensatory and actual damages."  (Am. Compl.)

Defendants filed a motion to dismiss Plaintiffs' claims on March 27, 2020, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief could be granted.  (Docket entry no. 30.)  Defendants also filed a motion for partial summary judgment on June 12, 2020, arguing that all of Plaintiff's claims arising from the alleged conduct pre-dating November 8, 2016, should be precluded based on the terms of a general release that Plaintiff executed as part of a settlement of three actions Plaintiff had filed against the City of New York and its employees.  (Docket entry nos. 37, 40.)  In connection with their motion for summary judgment, Defendants proffered a Local Rule 56.1 Statement and a

Declaration of Lillian P. Wesley, to which the parties' November 8, 2016, settlement agreement and general release were attached. (Docket entry nos. 38-39.) The general release stipulates:

> [I]n consideration of the payment of five thousand ($5,000) DOLLARS to [Mr. Drew] by the City of New York, [Mr. Drew] do[es] hereby release and discharge defendants City of New York . . . and all past and present officials, employees, representatives, and agents of the City of New York or any entity represented by the Office of the Corporation Counsel, . . . from any and all liability, claims, or rights of action alleging a violation of [his] civil rights and any and all related state law claims, from the beginning of the world to the date of this General Release, including claims for costs, expenses, and attorneys' fees.

(Docket entry no. 38, Declaration of Lillian P. Wesley ("Wesley Decl."), Exhibit 1.)

Mr. Drew has not responded to either Defendants' motion to dismiss or their motion for partial summary judgment, despite being served with the appropriate notice by Defendants that his claims may be dismissed without a trial should he choose not to respond to their summary judgment motion. (Docket entry no. 41.) Thus, the Court finds both motions to be fully briefed and unopposed.

## DISCUSSION

<u>Defendants' Motion for Partial Summary Judgment</u>

Because Defendants' motion for partial summary judgment is potentially dispositive as to all of Plaintiff's claims with the exception of those arising out of the September 2018 lockdown, which "are addressed in Defendants' motion to dismiss," docket entry no. 40 ("Def. MSJ Mem.") at 1 n.1,[3] the Court will first evaluate Defendants' motion for partial summary judgment.

---

[3] Defendants refer to the 2018 lockdown as occurring in December 2018, but Plaintiff's Amended Complaint alleges that it occurred in September 2018. Therefore, the Court will refer to the 2018 lockdown at issue here as the September 2018 lockdown.

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is to be granted in favor of a moving party where that party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). Material facts are those that "might affect the outcome of the suit under the governing law," and there is a genuine dispute where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 104 (2d Cir. 2011) (internal quotations and citations omitted). In evaluating a motion for summary judgment, the Court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010) (citation omitted).

Defendants argue that Plaintiff's claims arising from incidents predating November 8, 2016, should be dismissed because those claims are covered by the general release he signed in connection with his November 8, 2016, settlement agreement pertaining to three actions he previously filed against the City of New York and its employees. (Def. MSJ Mem. at 1-2.) Defendants argue that the general release precludes Plaintiff's claims arising from the incidents that allegedly occurred in December 2015, and February through March 2016, because those claims predated the signing of the agreement. (Id. at 2 (explaining that the general release released "the City and its employees from all constitutional violations that allegedly occurred prior to November 8, 2016").) In support of this argument, Defendants refer the Court to the text of the release and the decision in Drew v. City of New York, No. 18-CV-10714-ER, 2019 WL 3714932 (S.D.N.Y. Aug. 6, 2019), see Def. MSJ Mem. at 4, in which Judge Ramos dismissed Mr. Drew's complaint alleging violations of his constitutional rights arising out of incidents that allegedly occurred while he was in custody during February and July of 2016. In reaching that

decision, Judge Ramos agreed with Defendants that the same general release at issue here precluded Mr. Drew's claims, relying on the rationale that (1) Mr. Drew had not contested the authenticity of the release; (2) the incidents at issue pre-dated the release; (3) the language of the release was "unambiguous and enforceable"; (4) Mr. Drew received consideration in the form of payment from the city in exchange for the relinquishment of his right to bring suit against the City for violations of his civil rights predating the release; and (5) Defendants were within the scope of the release because they were employees of the City of New York.  Drew, 2019 WL 3714932, at *3-4.

The Court finds Judge Ramos' reasoning in Drew persuasive and reaches the same conclusion here, finding that Mr. Drew's claims that arose before the general release are precluded.  First, Mr. Drew did not oppose Defendants' motion for partial summary judgment and therefore presented no challenge to "the authenticity of the release, his signature on the release, or conditions under which he signed the release."  Drew, 2019 WL 3714932, at *3.  Moreover, because Defendants have proffered a copy of the release, which contains Mr. Drew's signature and was authenticated by a notary public, the Court concludes that no reasonable jury could find that the document is inauthentic based on the current record.  Stephens v. Barnes, No. 16-CV-7133-LGS, 2018 WL 618454, at *2-3 (S.D.N.Y. Jan. 25, 2018) (noting that "the General Release is notarized, which creates a rebuttable presumption that the signature is genuine"). Second, the claims arising from the December 2015 and February–March 2016 incidents, and the Defendants in this action, fall within the scope of the general release because the alleged incidents predate the November 8, 2016, agreement and the claims are asserted against the "City of New York" and its "employees," namely employees of the New York City Department of Correction and Correctional Health Services.  Third, the Court agrees with Judge Ramos' finding in Drew that the language of the general release is "unambiguous and enforceable."  Drew, 2019

WL 3714932, at *3; see also Braxton/Obed-Edom v. City of New York, No. 17-CV-199-GBD-SDA, 2020 WL 1303558, at *3 (S.D.N.Y. Mar. 19, 2020) (finding that general release between the plaintiff and the City of New York was "unambiguous" and "if not void, bar[red] Plaintiff's claims"); Stephens, 2018 WL 618454, at *2-3 (granting defendants' motion for summary judgment where the "General Release, by its clear and unambiguous terms, preclude[d] the claims in [the] lawsuit" and "no reasonable juror could conclude that the Complaint's claims under [section] 1983 for alleged violations of Plaintiff's constitutional rights [were] not barred by the General Release").

Thus, the Court dismisses Mr. Drew's claims that pre-date the signing of the November 8, 2016, release. Only Mr. Drew's allegations relating to the September 2018 lockdown remain. Plaintiff alleges that he was "locked-in at 9:00 p.m., Sept. 13, 2018[,]" and "only allowed to lock-out twelve (12) hours later at 9:00 a.m., Sept. 14, 2018." (Am. Compl. ¶ 43). The Court will now turn to the arguments the Defendants raised in their motion to dismiss regarding those allegations.

Defendants' Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A proper complaint cannot simply recite legal conclusions or bare elements of a cause of action; there must be factual content pleaded that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). The Court accepts as true the nonconclusory factual allegations in the complaint and draws all reasonable inferences in the nonmoving party's favor. Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007).

Where, as here, a litigant proceeds pro se, that litigant's submissions "must be construed liberally and interpreted to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (citation and internal quotation marks omitted) (emphasis in original). "This policy of liberally construing pro se submissions is driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training.'" Id. at 475 (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)). This policy "applies with particular force when a plaintiff's civil rights are at issue." Little v. Municipal Corp., 51 F. Supp. 3d 473, 484 (S.D.N.Y. 2014) (quoting Maisonet v. Metro. Hosp. & Health Hosp. Corp., 640 F. Supp. 2d 345, 348 (S.D.N.Y. 2009)). However, "the liberal treatment afforded to pro se litigants does not exempt pro se parties 'from compliance with relevant rules of procedural and substantive law.'" Id. (quoting Maisonet, 640 F. Supp. 2d at 348).

In their motion to dismiss, Defendants first argue that Plaintiff's allegations concerning the September 2018 lockdown do not rise to the level of a constitutional violation. For the following reasons, the Court agrees.

1. First Amendment Right to Freedom of Association

Plaintiff asserts that he brings this "federal question action . . . for violations of the Freedom of Association Clause[]." (Am. Compl. ¶ 1.) He alleges that there is "no legitimate penological purpose for placing cell-status detainees in lock-down status," id. ¶ 9, and his "[f]reedom of [a]ssocation is, and will continue to be[,] randomly, curtailed by these discretion abuses." (Id. ¶ 8). Plaintiff further alleges that "the ('D.O.C.') Classification Policy . . . subjects the detainee population to more instances of familial association abuses when housed in cell-

status classification[] than those in dorm-status classification." (Id. ¶ 28). Defendants argue that Plaintiff has failed to state a claim that his First Amendment right to freedom of association was violated because his allegations are "vague and conclusory," and to the extent "Plaintiff alleges that . . . he could not freely interact with other inmates" during the lockdown, "Plaintiff has no constitutional right to associate with other inmates." (Docket entry no. 31 ("Def. MTD Mem.") at 6.)

The Supreme Court and courts within this District have found that "an inmate 'does not retain rights inconsistent with proper incarceration,' and 'freedom of association is among the rights least compatible with incarceration.'" Miller v. Annucci, No. 17-CV-4698-KMK, 2019 WL 4688539, at *13 (S.D.N.Y. Sept. 26, 2019) (quoting Overton v. Bazzetta, 539 U.S. 126, 131 (2003)). The Constitution does "'protect[]certain kinds of highly personal relationships' and there exists 'a right [of inmates] to maintain certain familial relationships, including association among members of an immediate family.'" Id. (quoting Overton, 539 U.S. at 131); see also Brogdon v. City of New York, No. 16-CV-8076-LAK-RWL, 2018 WL 4762981, at *12 (SDNY Aug. 8, 2018) ("A prison inmate's rights to communicate with family and friends are essentially First Amendment rights subject to [section] 1983 protection."). However, "inmates' associational rights can be permissibly curtailed to a great degree due to the very nature of incarceration." Little, 51 F. Supp. 3d at 494 n.11; see also Miller, 2019 WL 4688539, at *13 (explaining some "curtailment" of the freedom of association "must be expected in the prison context" (internal quotation and citation omitted)).

While inmates retain a certain degree of the freedom to associate among their immediate family members, courts have found that "an inmate does not have a 'constitutional or statutory right to . . . associate with other inmates.'" Vega v. Artus, 610 F. Supp. 2d 185, 202

(N.D.N.Y. 2009) (quoting Fisher v. Goord, 981 F. Supp. 140, 169 (W.D.N.Y. 1997)); Jones v. N.C. Prisoners' Labor Union, Inc., 433 U.S. 119, 125-26 (1977) ("Perhaps the most obvious of the First Amendment rights that are necessarily curtailed by confinement are those associational rights that the First Amendment protects outside of prison walls . . . . Equally as obvious, the inmate's 'status as a prisoner' and the operational realities of a prison dictate restrictions on the associational rights among inmates."). Moreover, "[t]o the extent that a prison procedure curtails a prisoner's freedom to associate, the prisoner's constitutional right is not violated if the procedure 'bear[s] a rational relation to legitimate penological interests.'" Amaker v. Annucci, No. 14-CV-9692-KMK, 2016 WL 5720798, at *4 (S.D.N.Y. Sept. 30, 2016) (internal quotation and citation omitted); see also Whittington v. Ponte, No. 16-CV-1152-AJN, 2020 WL 2750372, at *14 (S.D.N.Y. May 27, 2020) ("[L]imitations on visits that are reasonably related to a legitimate penological interest do not violate a prisoner's constitutional right. This is true for pretrial detainees as well."). The "burden . . . is not on the State to prove the validity of prison regulations[,] but on the prisoner to disprove it." Amaker, 2016 WL 5720798, at *4 (quoting Overton, 539 U.S. at 132.)

The Court finds that Plaintiff has failed to state a claim that the September 2018 lockdown violated his First Amendment right to freedom of association. First, although Plaintiff claims that he filed this action "for violations of the Freedom of Association clauses," Am. Compl. ¶ 1; that the "Freedom of Association . . . will continue to be . . . curtailed by these discretion abuses," id. ¶ 8; and that the "arbitrary lock-down procedures" constitute an "unreasonable interference with familial associations," id. ¶ 41, his allegations lack factual content explaining how the 12-hour lockdown in September 2018 violated his freedom to associate. To the extent Plaintiff is aggrieved about interference with his "familial associations,"

id., Plaintiff does not allege that such lockdown deprived him of contact with members of his family, by pleading, for example, that the lockdown resulted in missed opportunities for telephone calls or visits with particular loved ones. To the extent Plaintiff is aggrieved that he was separated from other inmates during that 12-hour period, Plaintiff similarly fails to put forth any specific allegations regarding his isolation from fellow inmates and any harm that was caused. Moreover, the Court notes that, while the Constitution protects an inmate's right to "maintain certain familial relationships, including association among members of an immediate family," Miller, 2019 WL 4688539, at *13 (internal quotation and citation omitted), it is not aware of any authority within this District protecting the right of inmates to associate with each other over the course of a twelve-hour period.

Therefore, the Court finds that Plaintiff has failed to state a claim that his First Amendment right of association was violated through the September 2018 lockdown.

2. Conditions of Confinement

Defendants acknowledge that "Plaintiff's allegation[s] concerning the lockdown[] can be construed as raising a claim for unconstitutional conditions of confinement[,]" but argue that "Plaintiff has failed to satisfy both parts of the [requisite] standard" for plausibly alleging such a claim. (Def. MTD Mem. at 7.)

To plead a claim for unconstitutional conditions of confinement, a pretrial detainee must allege that "the officers [involved] acted with deliberate indifference to the challenged conditions." Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017). There are "two prongs" to such a claim: "an 'objective prong' showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process, and a 'subjective prong' . . . or 'mental element prong'—showing that the officer acted with at least

deliberate indifference to the challenged conditions." Id.; see also Jabber v. Fischer, 683 F.3d 54, 57 (2d Cir. 2012) (explaining that, while "there is no static test to determine whether a deprivation is sufficiently serious[,] . . . . "prisoners may not be deprived of their basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety—and they may not be exposed to conditions that pose an unreasonable risk of serious damage to [their] future health") (internal quotations and citations omitted).

Plaintiff has not alleged that he suffered any harm—let alone that he was "deprived of [any] basic human need"—during the 12-hour lockdown in September 2018, Jabber, 683 F.3d at 57, nor does Plaintiff allege that any Defendant "knew or should have known" that the September 2018 lockdown posed an "unreasonable risk of serious damage to his health." Darnell, 849 F.3d at 30; see also Corley v. City of New York, No. 14-CV-3202-GHW, 2017 WL 4357662, at *12 (S.D.N.Y. Sept. 28, 2017) (finding "[p]laintiff's allegations do not plead the necessary requirements" for a claim for unconstitutional conditions of confinement where plaintiff's pleading "contain[ed] no facts to suggest that the lock-downs [at issue] caused him any harm whatsoever"). Thus, the Court concludes that Plaintiff has failed to plausibly allege a claim for unconstitutional conditions of confinement arising from the September 2018 lockdown.

3. Due Process

Plaintiff alleges that an "inaccurate [h]igh [c]harge [infraction] as part of a classification policy" was utilized in 2018 and "injured [him] with an undue burden of lock-down in cell-status housing without legitimate purpose." (Am. Compl. ¶¶ 33-34). He further alleges that "[d]uring this classification error, ('DOC') failed to provide an adequate forum for assistance and subjected Plaintiff to lock-down abuse in the wrong classification housing unit, in

complete and utter disregard for Due Process protection." (Id. ¶ 35.) Defendants argue that, to the extent Plaintiff alleges a violation of procedural and substantive due process under the Fourteenth Amendment, Plaintiff has failed to state a claim.

To proceed on a procedural due process claim, "a plaintiff must establish that (1) he possessed a liberty interest, and (2) he was deprived of that interest through insufficient process.'" Walker v. Shaw, No. 08-CV-10043-CM, 2010 WL 2541711, at *4 (S.D.N.Y. June 23, 2010) (citing Ortiz v. McBride, 380 F.3d 649, 654 (2d Cir. 2004)). A pretrial detainee "has a liberty interest, protectable under the Due Process Clause, where 'conditions amount to punishment of the detainee'" since "the 14th Amendment protects an individual's liberty interest in avoiding punishment before the legal adjudication of guilt." Valdez v. City of New York, No. 11-CV-05194-PAC-DF, 2013 WL 8642169, at *7 (S.D.N.Y. Sept. 3, 2013), report and recommendation adopted 2014 WL 2767201 (S.D.N.Y. June 17, 2014) (quoting Bell v. Wolfish, 441 U.S. 520, 535 (1979)). However, if the "restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment." Id. (quotation omitted); see also Taylor v. Comm'r of New York City Dep't of Corr., 317 F. App'x 80, 82 (2d Cir. 2009) ("Absent a showing of an expressed intent to punish, the determination whether a condition is imposed for a legitimate purpose or for the purpose of punishment 'generally will turn on whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].'") (citation omitted).

Defendants argue that Plaintiff fails to allege a procedural due process claim based on his allegedly erroneous classification that resulted in his placement in "cell-status housing" where he was subject to the September 2018 lockdown, Am. Compl. ¶¶ 34, 43, because

Plaintiff "fails to allege that his housing placement or his security classification were punitive[,] [and] [i]n the absence of such allegations, Plaintiff does not have a liberty interest in connection with either his housing placement or his security classification."  (Def. MTD Mem. at 9.)

The Court agrees.  Plaintiff alleges that his security classification was based on "inaccurate" "high charge[s]" as part of a "classification policy" that caused him "undue burden, and punishment."  (Am. Compl. ¶¶ 31, 33-34.)  However, Plaintiff fails to put forth any allegations that Defendants operated with an "expressed intent to punish," Taylor, 317 F. App'x at 82, when they determined his classification level or housed him in "cell-status" housing.  (Am. Compl. ¶ 36); Valdez, 2013 WL 8642169, at *6, 8 (S.D.N.Y. Sept. 3, 2013) (dismissing Plaintiff's "claim that, as a pretrial detainee he had a liberty interest . . . in being free from unlawful 'punishment,' and that his . . . classifications constituted such punishment" where Plaintiff "ha[d] not alleged that either [challenged] classification was imposed with an 'expressed intent to punish'"); Hosannah v. Nassau Cty. Criminal Supreme Court Sergeant Officer(s), No. 16-CV-1045-JFB-AYS, 2017 WL 3207966, at *9 (E.D.N.Y. July 5, 2017), report and recommendation adopted sub nom. Hosannah v. Sposato, 2017 WL 3207750 (E.D.N.Y. July 26, 2017) (finding Plaintiff failed to allege a due process claim based on his "escape risk" classification because he failed to allege "that the classification was imposed with an 'expressed intent to punish'").

Nor has Plaintiff alleged any facts "to give rise to a plausible inference that the conditions associated with his classification[] were excessive in relation to the legitimate government interests."  Valdez, 2013 WL 8642169, at *8-9 ("[A] due-process challenge to a detainee's administrative classification may also be dismissed under Rule 12(b)(6), where the plaintiff has alleged no intent to punish and no consequences of the classification that could be

considered punitive in nature."); Little, 51 F. Supp. 3d at 496 (dismissing due process claim centered on classification in security risk group, in part, because plaintiff failed to allege "conditions so extreme as to amount to punishment"); Corley, 2017 WL 4357662, at *10 (finding Plaintiff failed to plead a due process claim where he had "not pleaded any facts to suggest that [the] deprivation was not part of the ordinary administration of the [facility]"); Lewis v. Amato, No. 12-CV-607, 2013 WL 3387078, at *6, 11 (N.D.N.Y. July 8, 2013) (finding pretrial detainee demonstrated liberty interest "raising due process concerns" where he "spent 140 days . . . in an environment" where "he was locked in his cell for twenty-three hours a day"). To the contrary, Plaintiff's classification seems to reflect Defendants' efforts to "maintain[] institutional security and preserv[e] internal order and discipline," Bell, 441 U.S. at 546-47, by "separat[ing] potentially disruptive groups of inmates." Walker, 2010 WL 2541711, at *4.

In addition, to the extent Plaintiff argues that his liberty interests were violated because Defendants' conduct did not comply with the New York City Board of Correction's Minimum Standard 1-05 on Lock-In Time, the Court notes that the Board of Correction's Minimum Standards do not "give[] rise to a liberty interest that protects Plaintiff from security classification (or mis-classification)." Walker, 2010 WL 2541711, at *6; see also id. (collecting cases where courts in this District "have concluded that the Minimum Standards do not create a protectable liberty interest").

Therefore, the Court finds that Plaintiff has failed to state a viable claim for violation of procedural due process because he has failed to allege facts indicating that his

classification was punitive, and "administrative classification . . . does not give rise to a protectable liberty interest." Walker, 2010 WL 2541711, at *4.

Defendants also argue that Plaintiff fails to state a claim for violation of substantive due process because he has failed to allege a hardship that is "'substantially more grave' than the typical . . . hardships experienced by prisoners of the general population." (Def. MTD Mem. at 9 (citation omitted).) To state a claim that "an official's conduct violated substantive due process under the Fourteenth Amendment, a plaintiff must allege that a government official deprived him or her of a fundamental right and that the conduct of the official in doing so 'was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" Pape v. Cook, No. 3:20-CV-1324-VAB, 2021 WL 2186427, at *11 (D. Conn. May 28, 2021) (quoting Hurd v. Fredenburgh, 984 F.3d 1075, 1087 (2d Cir. 2021)). "Conduct that is merely 'incorrect or ill-advised' does not constitute conduct that may form the basis of a substantive due process claim." Id. (quoting Lowrance v. Achtyl, 20 F.3d 529, 537 (2d Cir. 1994)).

The Court finds that Plaintiff's allegation that he, and the inmates within his housing unit, were subject to a twelve-hour lockdown from 9:00 p.m. on September 13, 2018, until 9:00 a.m. on September 14, 2018, see Am. Compl. ¶ 43, is insufficient to state a claim that Defendants' conduct violated substantive due process. See e.g., Pape, 2021 WL 2186427, at *12 (dismissing substantive due process claim where plaintiff alleged he was subjected to a "two-week confinement in a quarantine cell"); Sandin v. Connor, 515 U.S. 472, 483-484 (1995) (identifying two examples of conduct that would be sufficiently egregious to violate a prisoner's

right to substantive due process: involuntary transfer to a mental health hospital and involuntary administration of psychotropic drugs).

Having found that Plaintiff's allegations fail to plead plausibly a claim for violation of a constitutional right, the Court need not reach the Defendants' arguments that Plaintiff has failed to allege the personal involvement of Defendants Ponte, Brann, Smalls, and Glover in any violations and has also failed to allege facts suggesting municipal liability. See e.g. Corley, 2017 WL 4357662, at *22 (finding City cannot be liable where "plaintiff cannot establish a violation of his constitutional rights") (internal quotation and citation omitted).

### CONCLUSION

For the reasons discussed above, Defendants' unopposed motion for partial summary judgment is granted, in its entirety, and Defendants' unopposed motion to dismiss the amended complaint is granted as to the remaining claims.

This Memorandum Order resolves docket entry nos. 30 and 37. The Clerk of Court is respectfully directed to enter judgment and close this case.

Chambers will mail a copy of this Memorandum Order to the pro se Plaintiff.

SO ORDERED.

Dated: January 3, 2022         /s/ Laura Taylor Swain
New York, New York             LAURA TAYLOR SWAIN
                               Chief United States District Judge

**Copy mailed to:**
Keith Drew
10 Paladino Ave.
#16B
New York, NY 10035